IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| María del Carmen Hernández, by herself and as a member of the Estate of Antonia González Marcano, also composed by Adbeel Rivera González, Carlos Manuel Betancourt González and Eliezer Rivera González<br><br>Plaintiffs<br><br>vs.<br><br>UNITED STATES OF AMERICA, as operator of the Veterans Affairs Hospital San Juan, Puerto Rico<br><br>Defendant | CIVIL NO.:<br><br><br><br><br><br><br><br>MEDICAL MALPRACTICE<br>FEDERAL TORT CLAIMS ACT |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**NOW COME** plaintiffs, María del Carmen Hernández González, Adbeel Rivera González, Carlos Manuel Betancourt González and Eliezer Rivera González (hereinafter referred to as plaintiffs), through the undersigned attorney, and very respectfully state, allege and pray as follows:

**JURISDICTIONAL BASIS AND VENUE**

1.      Defendant, the United States of America, operates the Veterans' Affairs Hospital of San Juan, Puerto Rico.

2.      Federal question jurisdiction exists under 28 U.S.C. §1346 (b).

1

3. On June 1, 2016, timely administrative claims were presented to the Department of Veterans' Affairs on behalf of Antonia González Marcano. *See* Exhibit 1.

4. On August 9, 2016, a supplemental administrative claim was filed on behalf of Antonia González Marcano. *See* Exhibit 2.

5. On November 14, 2016, timely administrative claims were presented to the Department of Veterans' Affairs on behalf of María del Carmen Hernández-González. *See* Exhibit 3.

6. On November 28, 2016 the Department of Veterans' Affairs was notified that claimant Antonia González Marcano passed away on November 13, 2016.

7. On December 13, 2016, the plaintiffs, as heirs to the estate of Antonia González Marcano, filed their administrative claims. *See* Exhibits 4-7.

8. On June 7, 2017, the United States Department of Veterans Affairs denied plaintiff's claims; therefore, this complaint is timely under the Federal Tort Claims Act. *See* Exhibit 8.

9. Venue lies in this District, pursuant to 28 U.S.C. §1402 (b) since the majority of the plaintiffs reside within this District and this is the District in which the acts or omissions giving rise to this Complaint took place.

**PARTIES**

10. Plaintiff, María del Carmen Hernández González is a citizen of the United States, the daughter of Antonia González Marcano, in turn wife of the late

Francisco J. Sánchez-León, and a legal resident of the Commonwealth of Puerto Rico.

11. Plaintiff, Adbeel Rivera González is a citizen of the United States, the son of Antonia González Marcano, in turn wife of the late Francisco J. Sánchez-León, and a legal resident of the Commonwealth of Puerto Rico.

12. Plaintiff, Carlos Manuel Betancourt González is a citizen of the United States, the son of Antonia González Marcano, in turn wife of the late Francisco J. Sánchez-León, and a legal resident of the Commonwealth of Puerto Rico.

13. Plaintiff, Eliezer Rivera González is a citizen of the United States, the son of Antonia González Marcano, in turn wife of the late Francisco J. Sánchez-León, and a legal resident of the Commonwealth of Puerto Rico.

14. Plaintiff, the estate of Antonia González Marcano (the deceased), is represented by her heirs, who have inherited her cause of action for pain and suffering caused by the Defendant's negligent actions or omissions in this case causing the death of Francisco J. Sánchez-León.

15. Defendant is the United States of America, as operator of the Veterans' Affairs Hospital of San Juan, which provides medical services to Veterans in Puerto Rico.

**GENERAL ALLEGATIONS**

16. Francisco J. Sánchez-León served in the Army of the United States from June 8, 1954 to June 5, 1956, when he was honorably discharged from active duty.

17. On October 6, 2015 Mr. Sánchez-León was admitted to the San Juan Veterans Affairs Medical Center due to an ulcer and osteomyelititis on his left foot heel.

18. During his stay at the VA Hospital Mr. Sánchez-León also suffered and was treated for elevated blood glucose levels, tachypnea and tachycardia.

19. After treatment with antibiotics and stabilization, Mr. Sánchez-León was discharged to the Community Living Center ("CLC") of the VA Hospital in order to complete intravenous antibiotics.

20. After many treatments, on November 5, 2105, medical doctors decided to discharge Mr. Sánchez-León from the CLC.

21. Mr. Sánchez-León's wife, Antonia González Marcano, plaintiffs' mother, was contacted by the CLC in order to pick up Mr. Sánchez-León from the CLC.

22. Unfortunately, Mrs. González suffered unexpected cardiovascular problems and was admitted to the emergency ward of a hospital on that same date.

23. Plaintiff María del Carmen Hernández called the VA hospital and informed personnel there of the situation, explaining that it was impossible to pick up Mr. Sánchez-León.

24. María del Carmen explained to the VA Hospital personnel that she would pick up Mr. Sánchez-León once Mrs. González's health condition was stabilized.

25. Mr. Sánchez-León's blood sugar levels were monitored at 7:30 of November 2, 2015 and found to be high at 326 mg.

26. Notwithstanding his medical condition, Mr. Sánchez-León was left unattended, unmonitored, uncorrected and untreated for more than 12 hours.

27. At 00:20 of November 6, 2015, Mr. Sánchez-León's blood sugar levels had shot up to 1300 mg/dl, a dramatic rise.

28. By 2:22 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 1255 mg/dl.

29. By 4:20 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 1092 mg/dl.

30. By 6:19 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 844 mg/dl.

31. By 8:30 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 628 mg/dl.

32. By 10:56 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 448 mg/dl.

33. By 18:26 of November 6, 2015, Mr. Sánchez-León's blood sugar levels were still extremely high at 215 mg/dl.

34. Because of the extremely high glucose levels in Mr. Sánchez-León, he was transferred to the Emergency Room and eventually ended in the Intensive Care Unit.

35. A CBG was ordered but it was not properly communicated to the staff for its blood sugar levels follow up.

36. As a result, Mr. Sánchez-León suffered numerous complications that resulted in his unfortunate death on November 6, 2015 at 22:42 at the Veterans' Affairs Hospital of San Juan due to the negligent acts and/or omissions of its employees and doctors.

37. After Mr. Sánchez-León's death, Dr. Antonio Sánchez, the Chief of Staff, and other officials of the VA Hospital, met with Maria del Carmen and her mother, Antonia, and confirmed that mistakes had been made, namely that tests ordered were not properly communicated to the staff for its blood sugar levels follow up.

38. The hospital and its medical staff had the duty to provide constant monitoring and the necessary assistance to Mr. Sánchez-León during his stay at the hospital.

39. The hospital, its doctors and staff breached their duty to provide the necessary assistance to Mr. Sánchez-León during November 5, 2016 that resulted in a dramatic increase in his blood sugar levels and subsequent death.

40. All of plaintiffs' administrative claims have been denied by the Department of Veterans' Affairs.

**CAUSE OF ACTION**

41. The allegations contained in the preceding paragraphs are incorporated herein by reference as if again fully set forth.

42. Defendant owed a duty of care to Mr. Francisco J. Sánchez-León and the plaintiffs in this case.

43. The hospital and its medical staff had the duty to provide constant monitoring and the necessary assistance to Mr. Sánchez-León during his stay at the hospital.

44. The hospital, its doctors and staff breached their duty to provide the necessary assistance to Mr. Sánchez-León during November 5, 2016 that resulted in a dramatic increase in his blood sugar levels and subsequent death.

45. Defendant breached its duty of care by failing to provide Mr. Sánchez-León with adequate and timely medical attention and care.

46. At all times herein pertinent, Defendant was negligent and breached its duty of care by failing to provide the proper medical attention, in failing to provide timely and adequate medical care, failing to communicate orders and tests performed or to be performed, failing to act upon test results, and otherwise failing to exercise due care and caution to prevent the damages sustained by plaintiffs through the negligent medical treatment of Mr. Sánchez-León.

47. Defendant did not provide the timely medical services nor timely treat Mr. Sánchez-León for his condition, especially his blood sugar level complication, that was required for a patient in Mr. Sánchez-León's condition and with his medical history.

48. Defendant failed to provide Mr. Sánchez-León with adequate medical attention that satisfied the exigencies generally recognized by the medical

profession in light of the modern means of communication and teaching, as measured by the standards of the profession, thereby causing Mr. Sánchez-León's death.

49. Among other acts or omissions that fell below the applicable standard of care, Defendant should have taken positive measures to treat Mr. Sánchez-León's blood sugar level dramatic rises, in light of his medical history, of which the Veterans Hospital had full knowledge.

50. Among other acts of omissions that fell below the applicable standard of care, Defendant should not have left Mr. Sánchez-León unattended, untreated and unmonitored for such an extended period of time (in excess of 12 hours).

51. All of Defendant's negligent acts and omissions, falling below the applicable standard of care, combined to contribute to Mr. Sánchez-León's death on November 6th, 2015, and in the absence of Defendant's negligent acts or omissions (if Mr. Sánchez-León had been given the proper care) it is certainly likely that Mr. Sánchez-León would have lived longer.

52. As a direct and proximate result of Defendant's lack of organization, supervision, care and failure to properly monitor and treat Mr. Sánchez-León, the plaintiffs and Mr. Sánchez-León suffered damages as described below.

## **DAMAGES**

53. The allegations contained in the preceding paragraphs are incorporated herein by reference as if again fully set forth.

54. As a direct and proximate result of the Defendant's professional negligence, lack of expertise, fault, and malpractice, Antonia González Marcano greatly suffered upon experiencing the excruciatingly painful, agonizing, and premature death of her husband.

55. As a direct and proximate result of the Defendant's professional negligence, lack of expertise, fault, and malpractice, Antonia González Marcano lost the company and support, emotional, social and financial, of her beloved husband, the active and entertaining life they shared, and the joy his company provided to her personal and family life, which has extended her suffering beyond the events prior to and including his death, and up until her death.

56. As a direct and proximate result of the Defendant's professional negligence, lack of expertise, fault, and malpractice, Antonia González Marcano suffered intense mental pain and anguish which caused her to feel extremely sad, suffer loss of sleep, fits of uncontrolled constant crying and depression, including suicidal thoughts, all of which required her to undergo psychological and psychiatric treatment.

57. Antonia González Marcano's damages are estimated to be not less than $2,000,000.00.

58. Antonia González Marcano died intestate on November 17, 2016, therefore, the damages she suffered as a result of the negligent acts and/or omissions of defendant are to be divided among her four heirs, herein plaintiffs, in equal parts.

59. Plaintiff María del Carmen was the person who mainly took care of Mr. Sánchez-León and, as such, developed a very close relationship with him. As a direct and proximate result of the Defendant's professional negligence, lack of expertise, fault, and malpractice, María del Carmen suffered intense mental pain, anguish and emotional distress.

60. María del Carmen's damages are estimated to be not less than $100,000.00.

61. Plaintiffs mother, Antonia González Marcano, suffered a $740.00 decrease in their monthly income/benefits, beginning the moment Mr. Sánchez-León's disability benefits were discontinued due to his death up until her death, which loss totals in excess of $8,880.

62. In the matter of special damages, plaintiffs incurred in additional costs of $1,695.00 in funeral costs.

**WHEREFORE**, it is very respectfully requested from this Honorable Court to enter judgment in favor of the plaintiffs and against the United States of America, in the amounts above requested plus interest, costs and reasonable attorney's fees, if warranted by the provisions of the Equal Access to Justice Act, and any further relief which this Honorable Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico, this 5th day of December, 2017.

                                        **VELÁZQUEZ & VELÁZQUEZ LAW OFFICES, P.S.C.**
P.O. Box 734
Caguas, PR  00726-0734
Tel.  787-744-7272
Fax  787-744-7277
Email:  rvv@vvlo.com


s/ Rafael J. Velázquez Villares
RAFAEL J. VELÁZQUEZ VILLARES
USDC 214302

428

11